IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| KYNDRYL, INC., | ) |
|     Plaintiff/Counter Defendant, | ) |
| v. | )    Case No. 23-03279-CV-S-BP |
| VINCENT CANNADY, | ) |
|     Defendant/Counterclaimant/<br>    Third Party Plaintiff. | ) |
| MANPOWERGROUP GLOBAL, INC., | ) |
|     Third Party Defendant. | ) |

## ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS AGAINST KYNDRYL, INC.

Plaintiff Kyndryl, Inc. ("Kyndryl") filed this suit on September 1, 2023, asserting claims arising out of its allegation Defendant took trade secrets and other information with him when his services were terminated. Defendant, acting pro se, obtained permission to file permissive counterclaims against Kyndryl that also named ManpowerGroup Global, Inc. ("Manpower") as a third-party defendant. Defendant later retained counsel and filed an Amended Answer and Counterclaims, which continued to name Manpower as a third-party defendant. (Doc. 104.) Now pending is Kyndryl's Motion to Dismiss the Amended Counterclaims for Failure to State a Claim, (Doc. 114), which is **GRANTED**.

### I. BACKGROUND

Defendant alleges that Manpower is an "independent staffing agency," and he was "employed by Manpower . . . and contracted to remotely support Manpower's provision of certain

services to [Plaintiff] between May 16, 2022, and June 20, 2023." (Doc. 104, p. 8, ¶¶ 1-2.)[1] While performing duties for Kyndryl, Defendant "worked directly with . . . Director Gary Langham and Associate Director, Markus Engel." (Doc. 104, p. 9, ¶ 6.)

At unspecified times, Defendant told Langham that Kyndryl was at risk of experiencing a data breach. (Doc. 104, p. 9, ¶ 7.) "Following this disclosure, [Engel] made several remarks to and about the defendant including, but not limited to calling him 'Boy' and telling him 'You will get in line.'" (Doc. 104, p. 9, ¶ 8.) Langham learned of Engel's comments and later, on or about June 19, 2023, had a discussion with Defendant. He suggested to Defendant "he should not think of the comments as racist" and should resign if he was not happy, but Defendant refused to do so. (Doc. 104, p. 9, ¶¶ 9-10.) The next day, Manpower told Defendant "Langham had terminated his contract under the guise of substandard or deficient work." (Doc. 104, p. 10, ¶ 12.)

In addition to these facts, Defendant alleges "Kyndryl and Manpower were aware that [he] suffered various Service-related disabilities," (Doc. 104, p. 10, ¶ 18), and that he was over 40 years of age. (Doc. 104, p. 10, ¶ 21.) He further alleges the individuals who replaced him "were young and white." (Doc. 104, p. 10, ¶ 16.)

Defendant asserts five counterclaims:

| | |
|---|---|
| Count I | Age discrimination in violation of the Age Discrimination in Employment Act (the "ADEA"); |
| Count II | Age discrimination in violation of the Missouri Human Rights Act (the "MHRA"); |
| Count III | Race discrimination in violation of the MHRA; |
| Count IV | Disability discrimination in violation of the Americans with Disabilities Act (the "ADEA"); and |

---

[1] All page numbers for documents filed with the Court are those generated by its CM/ECF system.

Count V         Intentional infliction of emotional distress.[2]

Kyndryl argues the claims against it must be dismissed for two reasons. First, it contends Defendant has not alleged it was his "employer" within the meaning of the ADA, the MHRA, or the ADEA. Second, it contends Defendant has not alleged sufficient facts to support the elements of his claims. Defendant opposes dismissal, and the Court resolves the parties' arguments below; additional allegations from the Amended Answer and Counterclaims will be discussed as necessary.

## II.  DISCUSSION

Under Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008); *see also Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted); *see also, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of

---

[2] Defendant numbered Count V as a second Count IV; the Court corrects the numbering here. In addition, the disability discrimination claim in Count IV also mentions Title VII of the Civil Rights Act, but Title VII does not address disability discrimination. *See* 42 U.S.C. § 2000e(2)(a) (Provision of Title VII making it unlawful for employer to discriminate against employee based on "race, color, religion, sex, or national origin" but not including disability).

3

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Finally, the Court is limited to a review of the Complaint, exhibits attached to the Complaint, and materials necessarily embraced by the Complaint. *E.g., Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697 n.4 (8th Cir. 2003).

### A. Kyndryl's Status as Defendant's "Employer"

The three statutory schemes upon which Counts I through IV are based—the ADEA, the MHRA, and the ADA—all require that Kyndryl be Defendant's "employer." *See Alexander v. Avera St. Luke's Hosp.*, 768 F.3d 756, 761 (8th Cir. 2014) (discussing the ADEA and the ADA); *Howard v. City of Kansas City*, 332 S.W.3d 772, 779 (Mo. 2011) (en banc) (discussing the MHRA). The statutory definitions, however, are not helpful. The ADEA and the ADA define an "employee" as "an individual employed by an employer," and define an "employer" as, *inter alia*, one who has employees. 29 U.S.C. § 630(b), (f); 42 U.S.C. § 12111(4), (5)(A). The MHRA similarly defines an "employer" as one who, *inter alia*, "has . . . employees . . . ." Mo. Rev. Stat. § 213.010(8). The Eighth Circuit has observed these definitions are "completely circular and explain[ ] nothing." *Hunt v. State of Missouri*, 297 F.3d 735, 741 (8th Cir. 2002) (quoting *Schwieger v. Farm Bureau Ins. Co.*, 207 F.3d 480, 483 (8th Cir. 2000)). In such cases, the common law of agency is applied to determine if a person is an employee. *E.g.*, *Ernster v. Luxco, Inc.*, 596 F.3d 1000, 1004 (8th Cir. 2010); *Lerohl v. Friends of Minnesota Sinfonia*, 322 F.3d 486, 489 (8th Cir. 2003). This requires consideration of the following factors, with no one factor being determinative:

- The hiring party's right to control the manner and means by which the work is conducted;
- The skill required;
- The source of the instrumentalities and tools;
- The location of the work;

- The duration of the relationship between the parties;
- Whether the hiring party has the right to assign additional projects to the hired party;
- The extent of the hired party's discretion over when and how long to work;
- The method of payment;
- The hired party's role in hiring and paying assistants;
- Whether the work is part of the regular business of the hiring party;
- Whether the hiring party is in business;
- The provision of employee benefits; and
- The tax treatment of the hired party.

*E.g.*, *Ernster*, 596 F.3d at 1003-04; *Lerohl*, 322 F.3d at 489.

Ordinarily, the Court would not expect a party asserting a discrimination claim to allege facts touching on these factors. This is not an ordinary case, however, because Plaintiff has alleged facts and made admissions suggesting he was Manpower's employee, but not Kyndryl's. As stated earlier, he describes Manpower as "an independent staffing agency that employed [him] at all times relevant to the proceedings and contracted with Kyndryl, Inc. for the services of the Defendant." (Doc. 104, p. 8, first ¶ 1.) Later, he repeated the allegation that he "was employed by Manpower . . . and contracted through Manpower to remotely support Manpower's provision of certain services to Kyndryl . . . ." (Doc. 104, p. 8, second ¶ 1.) And, in his Answer, Plaintiff admitted Kyndryl's allegation that he "was contracted by Kyndryl through a third party staffing agency who worked remotely on projects for Kyndryl." (*See* Doc. 1, ¶ 14; Doc. 104, p. 2, ¶ 14.) This admission is binding. *E.g.*, *Missouri Housing Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990).

In the face of his own allegations and admission—and in response to Kyndryl's argument that they do not support the conclusion he was its employee—Defendant does not point to any facts that would demonstrate otherwise, much less any facts that bear on the factors to be

5

Case 6:23-cv-03279-BP   Document 131   Filed 05/28/24   Page 5 of 10

considered under common law. (The Court's independent review of Defendant's Amended Answer and Counterclaims does not reveal any, either.) Defendant lists the factors but does not discuss them or explain how any facts he has alleged bear on them. (Doc. 121, p. 2.) Defendant's sole argument relies on EEOC Enforcement Guidance No. 915.002, which (in the Executive Summary) observes that "Staffing firm workers are generally covered under the anti-discrimination statutes . . . because they typically qualify as 'employees' of the staffing firm, the client to whom they are assigned, or both." Enforcement Guidance: Application of EEEO Laws To Contingent Workers Placed By Temporary Employment Agencies and Other Staffing Firms, 1997 WL 33159161, at *1 (Dec. 3, 1997). At best, this establishes Kyndryl could, under certain facts, be legally deemed Defendant's employer or co-employer—which is a far cry from demonstrating Defendant has alleged such facts.[3]

Defendant's Amended Answer and Counterclaims alleges facts suggesting he was not Kyndryl's employee, and he does not explain how his allegations plausibly demonstrate otherwise. Accordingly, Defendant has not adequately alleged Kyndryl was his employer, and the counts that depend on that fact (Counts I – IV) must be dismissed for failure to state a claim.

### B. Elements of Defendant's Claims

In addition to its arguments about its status as Defendant's employer, Kyndryl contends the counterclaims must be dismissed because Defendant has not adequately alleged facts

---

[3] The Court acknowledges Defendant alleges that in April 2023, he "was hired under 'Contract for Hire' terms giving him more rights than a temporary employee and treatment of a permanent employee," (Doc. 104, p. 9, ¶ 5), but he does not suggest this allegation is sufficient to demonstrate that he was Kyndryl's employee. Moreover, there is insufficient detail to determine whether the Contract for Hire transformed Defendant into Kyndryl's employee, and any construction that it did seemingly contradicts the other allegations and the admission in Defendant's Amended Answer and Counterclaims. Without any discussion from Defendant, the Court cannot rely on this allegation to conclude his pleading is sufficient.

supporting them. The Court will address the employment claims separately from the claim for intentional infliction of emotional distress ("IIED").

### 1. The Discrimination Claims

In the absence of direct evidence of discrimination (such as in this case), Defendant's discrimination claims are analyzed under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This framework requires Defendant to establish a prima facie case of discrimination by demonstrating (1) he was a member of a protected class, (2) he was meeting his employer's expectations, (3) he suffered an adverse employment action, and (4) there is evidence creating an inference of discrimination based on that protected class. *E.g.*, *Lightner v. Catalent CTS (Kansas City), LLC*, 89 F.4th 648, 653 (8th Cir. 2023); *Lipp v. Cargill Meat Solutions Corp.*, 911 F.3d 537, 544 (8th Cir. 2018); *Grant v. City of Blytheville*, 841 F.3d 767, 773 (8th Cir. 2016). While the burden shifting framework describes an evidentiary standard, not a pleading standard, Defendant must still allege facts that plausibly suggest he has a claim. *E.g.*, *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (citing *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009)); *see also Wilson v. Arkansas Dep't of Human Servs.*, 850 F.3d 368, 372 (8th Cir. 2017). The elements of the prima face case thus serve as a "prism to shed light upon the plausibility of the claim." *Blomker*, 831 F.3d at 1056 (quotation omitted); *see also Warmington v. Board of Regents of Univ. of MN*, 998 F.3d 789, 796 (8th Cir. 2021).

The Court readily concludes Defendant has not alleged facts demonstrating he has plausible claims for disability discrimination or age discrimination. Defendant has, at best, alleged he was a member of a protected class and was replaced by individuals outside the protected class.[4]

---

[4] The Court acknowledges Kyndryl's argument that Defendant has not plausibly alleged he is a "qualified individual with a disability" within the meaning of the ADA. In light of the Court's discussion, there is no need to consider this issue.

These allegations are insufficient because, without more, they do not plausibly suggest an inference of discrimination. *See Warmington*, 998 F.3d at 797 (upholding dismissal when the plaintiff "pled that she belongs to a protected group, was qualified for her former job, and suffered an adverse employment action" but "d[id] not . . . plausibly plead that the circumstances of her termination g[a]ve rise to an inference of discrimination."); *see also Ingram v. Arkansas Dep't of Correction*, 91 F.4th 924, 927-28 (8th Cir. 2024).[5]

Defendant's claim for race discrimination requires more discussion. Here, he argues there was "no non-racial reason [for Engle] to refer to him as 'Boy' and t[ell] him to 'get in line.'" (Doc. 121, p. 4.)[6] But even if Defendant's allegations are sufficient to demonstrate the comments evidenced racial animus, they are *Engle*'s statements—and Defendant alleges the decision to terminate his services was made by *Langham*. There are no allegations in the Amended Answer and Counterclaims, or arguments from Defendant, that explain how Engle's statements plausibly create an inference that Langham's decision was based on Defendant's race.

While the elements of the prima facie case do not establish a pleading standard, they are not irrelevant in determining whether a party has presented a plausible claim of discrimination. It is not enough to simply allege that one is a member of a protected class, was performing satisfactorily, and experienced an adverse employment action; there must be *something* creating an inference that the party's protected class had something to do with the adverse decision. Here,

---

[5] In his Suggestions in Opposition, Defendant asserts discrimination may be demonstrated by the fact Kyndryl "informed [him] that there was not enough work for the existing employees but then in turn hired three younger new hires and terminated him." (Doc. 121, pp. 3-4.) This fact is not alleged in the Amended Answer and Counterclaim; moreover, the Amended Answer and Counterclaim alleges the reason given for Defendant's termination was his poor performance—a fact that is not belied by Kyndryl's hiring of people to replace him.

[6] Defendant's Suggestions in Opposition also mention facts related to a transfer he requested, (Doc. 121, p. 4), but the Court disregards them because they are not alleged in the Amended Answer and Counterclaim.

8

Defendant pleads nothing to establish such a connection, so his discrimination claims must be dismissed.

### 2. Intentional Infliction of Emotional Distress

"To state a claim for intentional infliction of emotional distress, a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (en banc). In addition, "[t]he conduct must be intended *only* to cause extreme emotional distress to the victim." *Id.* (quotation omitted; emphasis supplied). The Court agrees that Defendant has not described extreme and outrageous conduct on Kyndryl's part.

To support a claim for IIED, the challenged "conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quotation omitted). Under Missouri law, it is the court's role to determine "whether the defendant's conduct may be reasonably regarded as so extreme and outrageous as to permit recovery [but] Missouri case law reveals very few factual scenarios sufficient to support a claim for intentional infliction of emotional distress. . . . [I]t is a rare occurrence when a defendant's conduct is sufficiently extreme and outrageous to warrant recovery." *Gillis v. Principia Corp.*, 832 F.3d 865, 874-75 (8th Cir. 2016) (cleaned up).

Defendant does not explain how the facts alleged in the Amended Answer and Counterclaims meet this standard; all he says is that the jury should decide if the conduct satisfies the standard. (Doc. 121, p. 4.) The Court disagrees, particularly given that *Gillis* indicates otherwise. Moreover, the Court concludes that the facts alleged— potentially race-based remarks and termination of Defendant's services—are not so atrocious or contrary to the norms of civilized

society that an IIED claim can be maintained. In making this decision, the Court notes examples of much more severe conduct that have been held insufficient. For instance, in *Gillis* the Eighth Circuit surveyed Missouri cases and observed that the following conduct would not support an IIED claim: (1) suffering insults, indignities, and threats, (2) being ridiculed and threatened with termination, and (3) being harassed and threatened with termination. *Gillis*, 832 F.3d at 875 (citing cases). In *Gibson v. Hummel*, 688 S.W.2d 4, 7 (Mo. Ct. App. 1985), the Missouri Court of Appeals also surveyed Missouri cases and observed that conduct insufficient to support an IIED claim included: (1) using a false statement to gain access to someone's house and (2) attempting to settle a lawsuit for wrongful death while the other party was in mourning over the death. *Gibson* itself involved a claim that the plaintiff's employer required her to take a polygraph and then fired her based on the results; that too was held insufficient to support an IIED claim.

As a matter of law, Plaintiff's allegations are insufficient to support a claim for IIED. Accordingly, Count V must be dismissed for failure to state a claim.

### III.  CONCLUSION

The Motion to Dismiss, (Doc. 114), is **GRANTED**, and the counterclaims against Kyndryl are **DISMISSED** because none of them state a claim.
**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
DATE: May 28, 2024    UNITED STATES DISTRICT COURT